Kathleen BAUMGARTEL, Appellant,

v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY,
Respondent.

No. ED 77452.

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 24, 2000.

James E. Lownsdale, St. Louis, for Appellant.

Robert A. Wulff, Julie S. Paez, St. Louis, for Respondent.

## OPINION

GEORGE W. DRAPER, III, Judge.

Kathleen Baumgartel (hereinafter, Baumgartel) appeals the trial court's grant of summary judgment in favor of American Family Mutual Insurance Company (hereinafter, American Family) alleging that there are genuine issues of material fact as to the coverage afforded to her under her policy in relation to uninsured and underinsured motorists. The judgment of the trial court is affirmed.

On June 20, 1993, Baumgartel's husband, Brian Baumgartel (hereinafter, Decedent), was killed in an automobile accident when Joanne Martin (hereinafter, Martin) struck him. Martin was driving a car owned by Mahlon Herr (hereinafter, Herr). Herr's vehicle was covered by a self-insurance plan under Pennsylvania law. Decedent was driving a Toyota truck at the time of the accident.

Baumgartel negotiated a settlement for the wrongful death of Decedent with Martin and Herr for $280,000 in September 1993 and signed a release as to any claims against Martin or Herr. This settlement was not approved by any court and was not the outcome of a lawsuit. Baumgartel received the full settlement amount in three installments over the next three years. She never filed a lawsuit against Martin or Herr for the wrongful death of her husband. American Family was not informed of this settlement nor was it a party to the settlement.

On February 20, 1998, Baumgartel notified American Family of Decedent's death and demanded payment under her insurance policy. Baumgartel had a policy covering her vehicle, a Dodge Dynasty, which provided coverage for uninsured and underinsured motorists, but the policy did not cover Decedent's vehicle. On April 3, 1998, American Family sent Baumgartel a reservation of rights letter questioning coverage under the policy based on an owned-vehicle exclusion pertaining to underinsured motorist coverage. The letter specifically stated that the investigation of Baumgartel's claim was continuing and that American Family reserved the right to deny coverage to her on any other grounds it found applicable.

On June 19, 1998, Baumgartel filed an action against American Family seeking damages under the uninsured motorist coverage section or the underinsured motorist coverage section of her policy for the death of Decedent due to the negligence of an uninsured motorist. American Family failed to file an answer to this petition. On October 19, 1998, Baumgartel filed an amended petition essentially alleging the same claims, but breaking them into two counts. On October 23, 1998, American Family filed its answer, asserting several affirmative defenses, including the running of the statute of limitations, release, setoff, failure to state a claim upon which relief could be granted, and reliance on various limitations under Baumgartel's policy.

On June 9, 1999, American Family filed a motion for summary judgment which was granted on December 27, 1999. The trial court held that as a matter of law Baumgartel could not show that Martin and Herr were legally liable to her for the death of Decedent because no statutory wrongful death action was ever brought against them. As such, Baumgartel failed to establish a necessary preliminary element of her uninsured and underinsured motorist claims. This appeals follows.

Upon review of Baumgartel's allegation that the trial court erred in granting summary judgment in favor of American Family, it is well settled that when considering an appeal from summary judgment, we review the record in the light most favorable to the nonmovant. *ITT Commercial Finance v. Mid–America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially de novo. *Id.* at 376. The criteria on appeal for testing the propriety of summary judgment are no different from those employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The burden of proof on a summary judgment movant is to establish a legal right to judgment flowing from facts about which there is no genuine dispute. *Id.* at 378.

A defending party may establish a right to judgment by showing: (1) facts that negate any one of the claimant's elements; (2) that the nonmovant has not been able to produce, or will not be able to produce, sufficient evidence to allow the trier of fact to find the existence of any of the claimant's elements; or (3) that there is no genuine dispute as to the existence of facts necessary to support the movant's properly pleaded affirmative defense. *Id.* at 381.

The nonmovant must show by affidavits, depositions, answers to interrogatories, or admissions on file, that one or more of the material facts shown by the movant to be without any genuine dispute is, in fact, genuinely disputed. *Id.* A genuine issue exists where the record contains compe-

tent materials that establish a plausible, but contradictory, version of the movant's essential facts. *Id.* at 382.

Baumgartel's first point on appeal claims that the trial court erred in determining that her claim was barred by the statute of limitations in that the applicable statute of limitations standard is determined by the statute governing contracts for a ten year limit; not the wrongful death statute of limitations period, which is limited to three years. Section 516.110 RSMo. (1994); Section 537.100 RSMo. (1994). American Family claims that since Baumgartel has not filed any action against Martin and/or Herr, the wrongful death statute of limitations applies and she cannot prove that she is legally entitled to recover from them. As such, American Family claims that she cannot pursue her uninsured motorist coverage or underinsured motorist coverage claim.

Both parties rely on *Crenshaw v. Great Central Ins. Co.,* 527 S.W.2d 1 (Mo.App.St. L.Dist.1975) in their arguments. In *Crenshaw,* the parents of a child killed due to the alleged negligence of an uninsured motorist brought suit against their insurer to recover under the uninsured motorist coverage provided for under their policy. *Id.* at 2. The parents failed to bring any kind of action for wrongful death against the alleged tortfeasor. *Id.* at 4. This suit was commenced approximately three years and four months after the death of their child.[1] *Id.*

The court in *Crenshaw* initially acknowledged the parents' suit against the insurer was an action in contract because it was based upon the insurance contract, and therefore, governed by the ten-year statute of limitations pursuant to Section 516.110. *Id.* However, the court went on to state:

> In order to prevail in this contract action, however, plaintiffs must establish that at the time this litigation against

the insurer was commenced, they were legally entitled to recover damages from the owner or operator of the uninsured highway vehicle. In other words, as an essential element of plaintiffs' cause of action in contract, plaintiffs must be able to demonstrate their right to recover for the wrongful death of their son. *Id.* at 4.

The court recognized that as a matter of law the parents could not make such a showing because at the time the insurance action was filed, the parents no longer had a cause of action for wrongful death against the alleged tortfeasor. *Id.* The court stated that [c]ompliance with the requirement that an action for wrongful death be commenced within two years is a necessary condition attached to the right to sue-not merely a statute of limitation in the ordinary sense. *Id.* at 4. The court concluded that at the time the insurance action was filed the parents were not legally entitled to recover from the alleged tortfeasor, that there could be no liability on the part of the tortfeasor under the wrongful death statute, and consequently, there could not be any recovery under the insurance contract which is conditioned on the legal liability of the tortfeasor to the insureds. *Id.* at 5.

■ Baumgartel argues that the holding in *Crenshaw* is flawed because the moment a person dies, the window of opportunity for a legal remedy is instantly decreased from ten years to three years. Further, Baumgartel argues that the term legally entitled to recover is ambiguous due to the varying interpretations by the courts of appeal in this state, and as such, should be construed against American Family. Finally, Baumgartel argues that following *Crenshaw* impermissibly truncates the statute of limitations as it pertains to contract actions she states is against Missouri public policy. Recognizing that various

---

1. At the time that *Crenshaw* was decided, the statute of limitations for commencing a wrongful death action was two years.

courts of this state have engaged in diverse discussions of these issues, we will briefly review the relevant cases in order to clarify the analysis of this threshold issue.

The meaning of legally entitled to recover was addressed in *Hunt v. State Farm Mutual Auto. Ins. Co.*, 560 S.W.2d 280 (Mo.App.Spring.Dist.1977), where the plaintiffs vigorously argued that the phrase legally entitled to recover meant only that they must establish fault on the part of the uninsured motorist and the absence of contributory negligence on the part of the decedent. In *Hunt*, the plaintiffs did not commence any wrongful death action against the tortfeasor before making a claim under their uninsured motorist coverage. Therefore, the issue in *Hunt* was the exact issue as addressed in *Crenshaw*, i.e., whether the plaintiffs' action under their uninsured motorist coverage was barred by the two year statute of limitation applicable to wrongful death, or whether the ten year statute generally applicable to contract actions controls. The court relied on *Crenshaw* and adopted its holding and rationale finding that the plaintiffs' action was barred by the wrongful death statute of limitations, and rejected plaintiffs' interpretation of legally entitled to recover. *Id.* at 282.

The Missouri Supreme Court addressed the meaning of legally entitled to recover in *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713 (Mo. banc 1979). To recover under an uninsured motorist policy, the insured does not need an unsatisfied judgment against the uninsured motorist, but has the burden of proving (1) that the other motorist was uninsured, (2) that the other motorist is legally liable to the insured, and (3) the amount of damages. *Id.* at 715. The second element, legal liability to the insured, is equivalent to the statutory and present contractual requirement that the insured be legally entitled to recover. *Id. Oates* interpreted *Crenshaw* and *Hunt* to stand only for the proposition that where there is a built-in, substantive limitation on the underlying tort action, which would bar the insured's action against the uninsured motorist at the time the action is filed against the insurer under the uninsured motorist policy, such limitation also bars the action against the insurer. *Id.* at 716.

The Missouri Supreme Court elaborated on the necessity of an unsatisfied judgment against the uninsured motorist in *Cobb v. State Sec. Ins. Co.*, 576 S.W.2d 726 (Mo. banc 1979). In that case, a child was fatally injured when struck by an uninsured motorist. The parents of the child sued both the uninsured motorist and the insurer for the wrongful death of their child. However, the uninsured motorist was never served and was dismissed from the cause of action. *Id.* at 731. The court held that since this is an action under an uninsured motorist clause of the insurance policy, the action may be brought directly against the company—an unsatisfied judgment against the uninsured motorist ... is not a condition precedent to recovery from the insurer. *Id.* at 733. The fact that the uninsured motorist had been dismissed from the action did not jeopardize the cause of action against the insurance company in the court's view. *Id.*

The court in *Taylor v. Farmers Ins. Co., Inc.*, 906 S.W.2d 882 (Mo.App. S.D.1995), recognized the complexity of the aforementioned cases and set out a cogent discussion of how they fit together. The facts and issues addressed by the *Taylor* court were similar to *Crenshaw* and *Hunt*, in that the plaintiffs sued to recover against their insurer under the uninsured motorist coverage of their policy for wrongful death. *Id.* at 884–85. In *Taylor*, the plaintiffs filed a wrongful death action within the appropriate time limitation, thus distinguishing it from *Crenshaw* and *Hunt*. *Id.* at 886. However, the wrongful death suit had not been disposed of by judgment, settlement or otherwise at the time that the opinion was issued. *Id.* The *Taylor* court stated that this did not serve as a stumbling block to the plaintiffs' cause of action against the insurer because a judg-

ment against the tortfeasor did not appear to be an element of the plaintiffs' claim for uninsured motorist benefits under the holding in *Oates.* *Id.*

After discussing the reasoning and holdings of *Crenshaw, Hunt, Oates,* and *Cobb,* the court recognized that the narrow holding of *Crenshaw* and *Hunt* was simply that one who seeks uninsured motorist benefits for the death of an insured cannot recover from the insurer if, at the time he sues the insurer, the deadline for filing a wrongful death action against the uninsured driver has passed and the claimant has filed no such action. *Id.* at 887. Moreover, the court stated that [n]either *Crenshaw* nor *Hunt* holds that the period of limitation for a wrongful death action against the uninsured driver supplants the ten-year period of limitation for a contract action seeking uninsured motorist benefits under an insurance policy. *Id.*

The *Taylor* court also questioned the logic of requiring a timely wrongful death action against the uninsured driver (as mandated by *Crenshaw* and *Hunt* ) when such an action can be dismissed without jeopardizing the claim for uninsured motorist benefits against the insurer (as permitted by *Cobb* ). *Id.* at 888. However, the court stated that it need not solve that conundrum. *Id.*

 In this case, Baumgartel failed to bring a wrongful death action against either Martin or Herr for her husband's death. However, Baumgartel promptly negotiated a settlement and signed a release with Martin and Herr merely three months after the accident. She received the full settlement amount of $280,000 in three equal installments over the next three years. Baumgartel failed to notify American Family of the accident until two years after the settlement had been paid in full and almost five years after the accident occurred. We are persuaded that had Baumgartel at least filed some type of wrongful death claim or action against either Martin or Herr, she would have met the necessary conditions to recovering under her uninsured motorist coverage as

dictated by *Crenshaw* and *Hunt.* The filing of this action would have saved Baumgartel's claim against American Family from being restricted by the wrongful death statute of limitations. We adhere to the principle stated in *Oates* that Baumgartel does not need an unsatisfied judgment against the uninsured motorist as a condition precedent to bringing her claim against American Family. Moreover, we follow the *Taylor* court in recognizing that even though a wrongful death action against the alleged tortfeasor may not have reached disposition, the mere filing of the action in and of itself within the wrongful death limitation period is sufficient to satisfy the conditions for bringing a claim against the insurer.

We hold that since Baumgartel failed to initiate any wrongful death action against Martin or Herr, she cannot show that she is legally entitled to recover from them and as such, her claim against American Family is barred by the wrongful death statute of limitations. Since this point is dispositive, we decline to address any of Baumgartel's other points on appeal. The judgment is affirmed.

GARY M. GAERTNER, P.J., and L. CRAHAN, J., concur.